IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CORNELL BRUMFIELD, | |
| Plaintiff, | CIVIL ACTION NO.: 2:20-cv-43 |
| v. | |
| B. SOLOW, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant B. Solow's Motion to Dismiss. Doc. 35. Plaintiff filed a Response, opposing Defendant's Motion to Dismiss, and Defendant filed a Reply. Docs. 41-2, 43. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claim against Defendant Solow for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Doc. 35. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.[1]

## PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, 28 U.S.C. § 1331, and the Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq.* ("PREA"). Docs. 1, 1-1. After conducting frivolity review, the Court dismissed all of Plaintiff's claims against the named Defendants except for Plaintiff's Eighth Amendment

---

[1] Additionally, the Court **DIRECTS** the Clerk of Court to **TERMINATE** Plaintiff's Motion for a Status Update. Doc. 46. The instant Report shall serve as an update for Plaintiff on the status of his case.

excessive force claim against Defendant Solow.  Docs. 14, 18.  Thus, Plaintiff was permitted to proceed on his <u>Bivens</u> excessive force claim against Defendant Solow.

In his Complaint, Plaintiff alleges while he was incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), Defendant Solow attacked him from behind.  Doc. 1 at 5.  According to Plaintiff, Defendant Solow assaulted Plaintiff by punching him in the face, placing him in a "rear naked chokehold," and holding his face to the ground, attempting to break his neck.  <u>Id.</u>; Doc. 1-1 at 5–6.

Defendant Solow argues Plaintiff's <u>Bivens</u> claim alleging excessive force should be dismissed for failure to exhaust his available administrative remedies prior to filing suit. Docs. 35, 43.  Plaintiff opposes Defendant's Motion to Dismiss, arguing he properly exhausted his administrative remedies in accordance with Bureau of Prisons' policy.  Doc. 41-2.

## DISCUSSION

### I.     Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); <u>see</u> <u>Jones v. Bock</u>, 549 U.S. 199, 202 (2007); <u>Harris v. Garner</u>, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  <u>Whatley v. Warden, Ware State Prison</u> (<u>Whatley I</u>), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA

2

requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit.") (quoting Higginbottom, 223 F.3d at 1261). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review compromising the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II. Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1214 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541

F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 201 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 201 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.     Applying <u>Turner</u>

Defendant argues Plaintiff's Complaint should be dismissed because he failed to properly exhaust his administrative remedies, as required by the Bureau of Prisons.  Doc. 35.

####     A.     The Bureau of Prisons' ("BOP") Administrative Remedies

FCI Jesup, where Plaintiff is incarcerated, utilizes the BOP procedures for prisoner grievances.  The BOP's administrative remedy procedure is codified in 28 C.F.R. § 542.10 *et seq*. and provides for the formal review of inmate's complaints related to their confinement.  28 C.F.R. § 542.10(a).

The first step under the BOP's grievance procedure is to submit a BP-9.  28 C.F.R. § 542.14(a).  An inmate must submit a BP-9 to the Warden of the institution where the inmate is incarcerated, typically within 20 days of the events which form the basis of the grievance occurred.  Id.  The Warden must respond within 20 days of the filing of the BP-9, though a one-time extension of 20 days is available.  28 C.F.R. § 542.18.

If an inmate is not satisfied with the Warden's response, he may submit an appeal using a BP-10 form to the appropriate Regional Director.  28 C.F.R. § 542.15(a).  An appeal to the Regional Director (i.e., the "Regional Director Appeal") must be submitted within 20 calendar days of the date the Warden signed the response.  Id.  Further, the Regional Director Appeal must be accompanied by a copy or duplicate original of the BP-9 and the Warden's Response.  28 C.F.R. § 542.15(b).  The Regional Director must respond within 30 days of the filing of the BP-10, though a one-time extension of 30 days is available.  28 C.F.R. § 542.18.

If an inmate is not satisfied with the Regional Director's response, he may appeal to the Central Office at the Office of General Counsel using a BP-11 form (i.e., the "Central Office

Appeal"). 28 C.F.R. § 542.15(a). The Central Office Appeal must be submitted within 30 calendars days of the date the Regional Director signed the response. Id. Further, a Central Office Appeal must be accompanied by a copy or duplicate original of the BP-9, BP-10, the Warden's Response, and the Regional Director's response. 28 C.F.R. § 542.15(b)(1). The Central Office must respond within 40 days of the filing of the BP-11, though a one-time extension of 20 days is available. 28 C.F.R. § 542.18. The Central Office is the final administrative remedy appeal in the BOP.

Thus, inmates are required to exhaust by first filing a BP-9 with the Warden, then appealing any undesirable response by filing a BP-10 with the Regional Director, and finally, by filing a BP-11 with the Central Office. For an appeal to a Regional Director Appeal or Central Office Appeal, an inmate must include a copy of the requests made at lower levels of the process, along with any responses. An inmate is required to complete the steps at each level to exhaust his remedies.

### B. Plaintiff Did Not Properly Exhaust Available Administrative Remedies

Defendant contends Plaintiff never properly appealed the denial of his initial grievance, his BP-9, relating to Defendant's alleged use of excessive force. Doc. 35 at 4. Instead, Plaintiff incorrectly appealed his BP-9 to the Regional Director. Further, before receiving a response on his Regional Director Appeal, Plaintiff improperly filed a Central Office Appeal. Moreover, Plaintiff filed suit before receiving a response from the Regional Director on his appeal. Id. at 5.

Plaintiff, on the other hand, contends he properly exhausted his administrative remedies related to his present suit. Doc. 41-2. Further, Plaintiff acknowledges, though he filed this suit prior to receiving a response on his Regional Director Appeal, this should not constitute a failure

to exhaust because he eventually sent the denial of his Central Office Appeal to the Clerk of Court.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. Plaintiff's allegations and Defendant's allegations do not conflict. Instead, the parties disagree on the legal implications of Plaintiff's grievances and his attempts at appeals.

Plaintiff initially filed a grievance at the BP-9 level related to these claims on December 2, 2019, which was denied on January 6, 2020. Doc. 35-1 at 2, 17; Doc. 41-1- at 2, 6. On January 14, 2020, Plaintiff filed a Regional Director Appeal. Doc. 35-1 at 2, 17; Doc. 41-1 at 3–4, 7. On April 29, 2020, Plaintiff's appeal was rejected as a new grievance improperly filed at the Regional Director level or because he failed to provide a complete copy of the BP-9 documents. Doc. 35-1 at 2, 17; Doc. 41-1 at 7.

A day after filing his Regional Director Appeal, on January 15, 2020, Plaintiff also appealed the decision in his BP-9 to the Central Office (i.e., the BP-11 level). Doc. 35-1 at 2, 18. On January 28, 2020, Plaintiff's Central Office Appeal was rejected for being at the wrong level, as Plaintiff failed to complete the BP-10 process prior to filing a Central Office Appeal. Id.; Doc. 41-1 at 8. On February 19, 2020, Plaintiff again filed a Central Office Appeal, and his appeal was again rejected. Id.; Doc. 1-2 at 19. In that rejection, Plaintiff was instructed to perfect a Regional Director Appeal and appeal that decision if necessary. On April 27, 2020, prior to receiving a response from the Regional Director, Plaintiff filed his Complaint. Doc. 1.

While Plaintiff ostensibly appealed to all three levels—BP-9, -10, and -11—he did not do so properly prior to filing suit. Plaintiff failed to properly exhaust available administrative, and

9

his suit is due to be dismissed. Plaintiff made several errors when trying to exhaust his administrative remedies. First, Plaintiff improperly filed his Regional Director Appeal. Plaintiff failed to attach his BP-9 or the response to his BP-9 when he appealed. Plaintiff does not assert he complied with this requirement. Doc. 41-1 at 2. Instead, Plaintiff insists the BOP was aware of his BP-9, thus excusing him from attaching his BP-9, but he points to no authority for this argument. Exhausting under the PLRA requires prisoners to follow and take each step within the administrative process. Bryant, 530 F.3d at 1378. Further, Plaintiff did not await a response on his Regional Director Appeal before filing his Central Office Appeal. Plaintiff filed his BP-10 on January 14, 2020, and then his BP-11 appeal on January 15, 2020. Similarly, Plaintiff could not have complied with the requirement to include the BP-10 appeal response because Plaintiff received that response *after* filing his BP-11 appeal. Gooch, 2018 WL 2248750, at *3 ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).

In sum, Plaintiff failed to properly exhaust his available administrative grievances and, instead, filed this suit. Accordingly, I **RECOMMEND** the Court **GRANT** Defendant Solow's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal. Doc. 35.

### IV.  Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P.

24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claim against Defendant Solow for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. Doc. 35. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 7th day of June, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA